# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TEXAS AUSTIN DIVISION

| | | |
|---|---|---|
| **Ann Tram Pham,** *Plaintiff*, | § | |
| | § | |
| **v.** | § | **No. 1:26-cv-00562-RP-SH** |
| | § | |
| **NewRez LLC d/b/a Shellpoint Mortgage Servicing,** | § | |
| | § | |
| *Defendant* | § | |

## REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

**TO: THE HONORABLE ROBERT PITMAN**
**UNITED STATES DISTRICT JUDGE**

Before the Court is Plaintiff's Emergency Motion for Temporary Restraining Order, filed September 21, 2026 (Dkt. 18).[1]

## I. Background

Plaintiff Ann Tram Pham is the creditor on a mortgage loan secured by real property (a condominium home) at 301 West Avenue, Unit 1301, Austin, Texas ("Property"). First Amended Petition, Dkt. 1-2 at 1-8. The Property is Pham's primary residence and is estimated to be worth $1,025,000. Dkt. 18-7 at 2. As of January 6, 2026, Pham owed a balance of $745,000 on her loan and her monthly loan payments were $5,400. Dkt. 18-3 at 7. Defendant NewRez LLC d/b/a Shellpoint Mortgage Servicing is the loan servicer. Dkt. 1-2 at 3.

[1] The Honorable Alan D Albright (ret.) referred to this Magistrate Judge all non-dispositive pretrial matters for disposition and all case-dispositive motions for findings and recommendations, pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, and Judge Albright's Standing Order on referrals to United States Magistrate Judges. Dkt. 3. On September 22, 2026, the case was reassigned to the Honorable Robert Pitman. The full case-referral remains in place.

### A. Alleged Facts

Pham alleges the following in her pleadings and has attached evidence in support: She became unemployed in April 2025 and fell behind on her monthly mortgage payments. Dkt. 18-3 at 11. Pham submitted a "completed" loss mitigation application to NewRez on January 6, 2026, "seeking alternatives to foreclosure, including short sale and other liquidation options." Dkt. 1-2 at 3; Dkt. 18-3 (loss mitigation application).

On January 12, 2026, NewRez Loss Mitigation Specialist Daniel Navarrette contacted Pham via email and asked her to provide a signed and dated letter outlining her proposed settlement to pay off the loan. Dkt. 1-2 at 3; Dkt. 18-4 (Navarrette's email). On January 23, 2026, Navarrette suggested that Pham apply for the Home Equity Shield program to avoid foreclosure and instructed her to contact a real estate broker to execute a listing agreement for the Property. Pham Decl., Dkt. 18-1 ¶ 5. Pham emailed Navarrette the listing agreement on January 26, 2026. Dkt. 1-2 at 3, 26 (email with attachment). Despite ongoing loss mitigation discussions, NewRez referred Pham's account to foreclosure counsel and proceeded on foreclosure. Dkt. 18 at 3. Navarrette did not disclose to Pham that "foreclosure was moving in parallel" with the loss mitigation discussions. Dkt. 18 at 3; Dkt. 18-1 ¶ 6.

Pham submitted a signed Home Equity Shield Agreement to Navarrette on February 5, 2026. Dkt. 18-5; Dkt. 18-1 ¶ 8. Navarrette informed Pham on February 24, 2026, that she agreed to "submit the Home Equity Shield application for approval." Dkt. 1-2 at 4. But "foreclosure activity did not stop." Dkt. 18-1 ¶ 8.

### B. Litigation

On February 20, 2026, Pham, proceeding *pro se*, sued NewRez in state court, alleging that NewRez violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*,

12 C.F.R. § 1024.41(g), and the Texas Debt Collection Act ("TDCA"), TEX. FIN. CODE § 392.301(a)(8), by actively pursuing foreclosure of her Property at the same time it was considering her for loss mitigation losses. Dkt. 1-2 at 2-6. Pham seeks injunctive relief to stop the impending foreclosure.

On March 9, 2026, NewRez removed the case to this Court on the grounds of federal question jurisdiction under 28 U.S.C. § 1331 and diversity jurisdiction under § 1332(a). Dkt. 1. Pham sought remand, which the Court denied on June 24, 2026. Dkt. 15.

Pham now brings this emergency motion under Rule 65 asking the Court to issue a temporary restraining order ("TRO") to stop the substitute trustee's sale of her Property currently set for October 6, 2026, set the case for a prompt preliminary injunction hearing, and grant a preliminary injunction after the hearing. Dkt. 18. She also asks the Court to set a nominal bond of $100 for the TRO due to her financial status.

## II. Legal Standard

A TRO is an "extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion." *Southwest Airlines Co. v. City of San Antonio*, 752 F. Supp. 3d 635, 642-43 (W.D. Tex. 2024) (quoting *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989)). The party moving for a TRO must establish four elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the TRO is denied; (3) that the threatened injury outweighs any damage that the TRO might cause the defendant; and (4) that the TRO will not disserve the public interest. *Id.* at 643. The party seeking a TRO "must satisfy a cumulative burden of proving each of the four elements enumerated before a temporary restraining order . . . can be granted." *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987).

Rule 65(b)(1) provides that a court may issue a TRO without written or oral notice to the adverse party or its attorney only if (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition, and (B) the movant certifies in writing any efforts made to give notice and the reasons why it should not be required. FED. R. CIV. P. 65(b)(1). A TRO is not subject to review on interlocutory appeal. *Satanic Temple, Inc. v. Texas Health & Hum. Serv. Comm'n.*, 79 F.4th 512, 514 (5th Cir. 2023).

## III. Analysis

This Magistrate Judge now addresses each TRO element to determine whether Pham is entitled to a TRO to stop the sale of her Property scheduled for October 6, 2026.

### A. Substantial Likelihood of Success on the Merits

"To show a likelihood of success, the plaintiff must present a prima facie case, but need not prove that he is entitled to summary judgment." *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 582 (5th Cir. 2013). Pham alleges that NewRez violated RESPA, 12 C.F.R. § 1024.41(g), and Section 392.301(a)(8) of the Texas Finance Code by actively pursuing foreclosure "while Plaintiff's complete loss mitigation application submitted on January 6, 2026, and related Home Equity Shield submission, remain[ed] pending and unevaluated." Dkt. 1-2 at 4.

Congress enacted RESPA as a "remedial consumer-protection statute." *Geoffrion v. Nationstar Mortg. LLC*, 182 F. Supp. 3d 648, 664 (E.D. Tex. 2016) (quoting 12 U.S.C. § 2601(a)).[2] Relevant here, Section 1024.41 of the Code of Federal Regulations describes the procedures mortgage

[2] 12 U.S.C. § 2601(a) provides: "The Congress finds that significant reforms in the real estate settlement process are needed to insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country."

servicers must follow when processing loss mitigation applications. *Germain v. US Bank Nat'l Ass'n as Tr. for Morgan Stanley Mortg. Loan Tr. 2006-7*, 920 F.3d 269, 272-73 (5th Cir. 2019). Section 1024.41(g) states:

> Prohibition on foreclosure sale. If a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale, unless:
>
> (1) The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied;
>
> (2) The borrower rejects all loss mitigation options offered by the servicer; or
>
> (3) The borrower fails to perform under an agreement on a loss mitigation option.

12 C.F.R. § 1024.41(g).[3] This section "expressly prohibits the practice of 'dual tracking,' which occurs when a lender 'actively pursues foreclosure while simultaneously considering the borrower for loss mitigation options.'" *Brown v. PHH Mortg. Corp.*, No. SA-25-CV-01123-FB, 2026 WL 2831810, at *6 (W.D. Tex. Aug. 27, 2026) (quoting *Gresham v. Wells Fargo Bank, N.A.*, 642 F. App'x 355, 359 (5th Cir. 2016)). A borrower has a private right of action to enforce Section 1024.41(g) under 12 U.S.C. § 2605(f). 12 C.F.R. § 1024.41(a).

Pham alleges that NewRez violated Section 1024.41(g) when it actively pursued foreclosure proceedings on her Property and failed to evaluate her loss mitigation application or her application for the Home Equity Shield program. She offers evidence that she submitted a complete loss

[3] Pham and some courts refer to this regulation as "Regulation X."

mitigation application to NewRez more than 37 days before the foreclosure sale and alleges that NewRez never told her that her application was incomplete. Dkt. 18 at 2; Dkt. 18-1 ¶ 5. Section 1024.41(g) "prohibit[s] servicers from foreclosing on a borrower whose application has been deemed facially complete." *Hurst v. Caliber Home Loans, Inc.*, 44 F.4th 418, 424 (6th Cir. 2022). Pham also alleges that Navarrette repeatedly told her that she would be approved for the Home Equity Shield program, "which was presented as time to sell the Property instead of going to foreclosure." Dkt. 18-1 ¶ 8. She alleges that this representation was false because NewRez was proceeding with foreclose at that time. *Id.*

Pham has alleged sufficient facts to state a prima facie claim under 12 C.F.R. § 1024.41(g) and 12 U.S.C. § 2605(f) and thus has shown a likelihood of success on her claim. *See Brown*, 2026 WL 2831810, at *6 (stating that Section 1024.41(g) prohibits a lender from "actively pursu[ing] foreclosure while simultaneously considering the borrower for loss mitigation options").

Section 392.301(a)(8) of the Texas Finance Code prohibits a debt collector from "threatening to take an action prohibited by law." TEX. FIN. CODE § 392.301(a)(8). Pham alleges that NewRez violated Section 392.301(a)(8) by failing to evaluate her loss mitigation and Home Equity Shield applications as required under RESPA and "conducting or noticing a foreclosure sale," which RESPA prohibits. Dkt. 18 at 5. The Court finds that these allegations are sufficient to state a violation of Section 392.301(a)(8) and that Pham also has a substantial likelihood of success on the merits of her TDCA claim.

**B. Substantial Threat of Irreparable Injury**

To satisfy the second element, Pham must show a substantial threat that she will suffer irreparable injury if the TRO is denied. "To show irreparable injury if threatened action is not enjoined, it is not necessary to demonstrate that harm is inevitable and irreparable. The plaintiff

need show only a significant threat of injury from the impending action, that the injury is imminent, and that money damages would not fully repair the harm." *Humana, Inc. v. Jacobson*, 804 F.2d 1390, 1394 (5th Cir. 1986).

Pham argues that there is a substantial threat she will suffer irreparable injury if the TRO is denied because (1) the Property is her home and the "[l]oss of unique real property is irreparable," since monetary damages "cannot restore the residence or unwind a sale to a third party"; (2) the threatened injury is not speculative, as the sale is scheduled for October 6, 2026; and (3) a forced sale threatens $175,000 in remaining equity in the Property. Dkt. 18 at 6.

Based on these allegations and the impending foreclosure sale, this Magistrate Judge agrees that Pham has demonstrated a substantial threat that she will suffer irreparable injury if the TRO is denied. *Osorio v. Martin*, No. 5:25-CV-1191-DAE, 2025 WL 3771341, at *4 (W.D. Tex. Nov. 24, 2025) ("The loss of a home has been found by other courts to cause an irreparable injury."); *Garcia v. Vazquez*, No. EP-15-CV-00225-DCG, 2015 WL 12910437, at *2 (W.D. Tex. Oct. 5, 2015) (finding that plaintiff would suffer irreparable harm by losing her home without an injunction).

**C. Balance of Harm**

When deciding whether to grant a TRO, "courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

This Magistrate Judge finds that Pham will suffer greater harm if the Court does not issue the TRO than NewRez will endure if the Court does grant relief. The balance of harms favors Pham because the 14-day TRO will simply preserve the status quo. NewRez will maintain its lien on the Property and suffer no loss during this short period while the Court reviews the motion for

preliminary injunction. If the sale goes forward, Pham will lose her condominium and $175,000 in equity. As Pham states, if her Property is sold on October 6, 2026, the Court would be unable to "restore the residence or unwind a sale to a third party." Dkt. 18 at 6.

### D. Public Interest

Finally, this Magistrate Judge finds that granting the TRO is in the public interest because the public has an interest in seeing that mortgage servicers do not engage in unlawful practices when collecting mortgage debts and pursuing foreclosures.

### E. Conclusion

Because Pham has satisfied her burden of proving each of the four elements for the TRO to issue, the Court should grant her Motion for Temporary Restraining Order.

## IV. Recommendation

For these reasons, this Magistrate Judge **RECOMMENDS** that the District Court **GRANT** Plaintiff's Emergency Motion for Temporary Restraining Order (Dkt. 18) and **ISSUE** a 14-day temporary restraining order (1) enjoining the October 6, 2026 Substitute Trustee's Sale of Real Property located at 301 West Avenue, Unit 1301, Austin, Texas; (2) prohibiting Defendant NewRez LLC from rescheduling the sale of the Property until the Court rules on the Motion for Preliminary Injunction; and (3) set a nominal bond of $100 due to Plaintiff's financial status.

If the District Court adopts this Report and Recommendation, the Court will promptly set a hearing on Plaintiff's Motion for Preliminary Injunction.

## V. Warnings

The parties may file objections to this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C). A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

Given the emergency circumstances of Plaintiff's Motion for Temporary Restraining Order, the Court finds good cause to shorten the usual 14-day objection period under 28 U.S.C. § 636(b)(1)(C). It is **ORDERED** that objections **MUST BE FILED within 7 days** of entry of this Report and Recommendation.[4]

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within 7 days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED on September 24, 2026.



SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE

[4] When exigent circumstances demand, the Court may reduce the 14-day period to file objections. *See Cagiza v. Mullin*, No. 26-CV-4573, 2026 WL 2211631, at *4 (S.D. Tex. July 22, 2026) (reducing objection period to seven days due to exigent circumstances of the motion for TRO), *R. & R. adopted*, 2026 WL 2211646 (S.D. Tex. July 31, 2026); *Chang v. Noem*, No. SA-25-CV-1259-FB (HJB), 2025 WL 3657324, at *3 (W.D. Tex. Dec. 8, 2025) (reducing objection period to 7 days), *R. & R. adopted*, 2025 WL 3670503 (W.D. Tex. Dec. 17, 2025); *Stephenson v. Caterpillar Inc.*, No. 2:16-CV-71-JRG-RSP, 2019 WL 1066177, at *6 (E.D. Tex. Feb. 26, 2019) (reducing objection period to two days), *R. & R. adopted*, 2019 WL 1063368 (E.D. Tex. Mar. 5, 2019); *see also United States v. Barney*, 568 F.2d 134, 136 (9th Cir. 1978) (explaining that the time limit for objections set in § 636(b)(1)(C) is a maximum, not a minimum, and the court may require a response in a shorter period if exigent circumstances require).